EMIL THOMAS LICKA, SR., Plaintiff-Appellant, *v.* WILLIAM A. SALES, LTD., *et al.*, Defendants.—(DR. THOMAS HALL, Defendant-Appellee.)

First District (2nd Division)   No. 78-794

Opinion filed April 3, 1979.

Richard S. Fleisher, of Karlin & Fleisher, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Neil K. Quinn, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Emil Licka, appeals from a judgment of the circuit court of Cook County dismissing his medical malpractice action as to defendant, Dr. Thomas Hall. The issue on appeal is whether the trial court erred in dismissing the action on the grounds: (1) that the cause was barred by the applicable statute of limitations (Ill. Rev. Stat. 1975, ch. 83, par. 22.1); and (2) that plaintiff failed to exercise reasonable diligence to obtain service on defendant, as required by Supreme Court Rule 103(b). Ill. Rev. Stat. 1975, ch. 110A, par. 103(b).

Sometime in January of 1975, plaintiff filed a one-count complaint alleging that he was injured as a result of negligence on the part of employees of defendant William A. Sales, Ltd., who allegedly provided plaintiff with an unsafe loading dock, so as to make lifting materials from the dock hazardous. On February 11, 1976, plaintiff filed an amended complaint in three counts, adding Lutheran General Hospital and Dr. Thomas Hall as defendants in counts II and III, respectively. The amended complaint essentially alleged that Lutheran General and Dr. Hall were negligent in permitting to be performed and performing a

laminectomy and fusion operation at the wrong location in plaintiff's spine. The operation was allegedly performed in October of 1973, more than two years prior to the filing of the amended complaint, but the amended complaint did not allege any time as to when plaintiff knew or reasonably could have discovered that he had been injured.

Plaintiff instructed the sheriff to serve summons on Lutheran General Hospital at its location in Park Ridge, Illinois, and Dr. Hall at a medical center with which he had been associated, located at 7255 N. Caldwell, Niles, Illinois. The sheriff made a return showing service upon the hospital but stating that he could not find Dr. Hall as Dr. Hall was no longer associated with the medical center. Plaintiff then placed an alias summons with the sheriff, directing him to serve Dr. Hall at the same address, but on March 12, 1976, it too was returned "not found" and with the notation that Dr. Hall was no longer with the center.

On March 25, 1976, the hospital answered the amended complaint as to count II and pleaded as an affirmative defense that the action was not commenced within the time limited by law. Plaintiff filed a reply to the affirmative defense, denying it and further stating that the action was commenced within two years from the time that plaintiff knew or should have known of the malpractice.

On April 20, 1976, plaintiff filed a second amended complaint,[1] additionally alleging in counts II and III that from the time of the initial operation by Dr. Hall in October of 1973, plaintiff continued to suffer great pain in his back; however, it was not until May of 1975 that plaintiff was advised that further treatment of his back might be required. Plaintiff alleged that until he had obtained other medical treatment, he did not know nor could he have known of the wrongful acts committed by defendant. Plaintiff further alleged that his suit was filed within two years of his acquisition of such knowledge.

Defendant Lutheran General Hospital answered the second amended complaint and again pleaded the statute of limitations as an affirmative defense. The hospital is not involved in this appeal.

After plaintiff's first alias summons was returned with Dr. Hall not found, plaintiff's attorneys checked the telephone directories for Chicago and the surrounding suburbs, but Dr. Hall was not listed. Plaintiff also asserts that he was unable to locate Dr. Hall at Augustana Hospital, where plaintiff's family had previously been treated by Dr. Hall, but the record does not reveal what effort was made.

Attorneys for plaintiff then contacted the Illinois Department of Registration and Education, which provided them with two addresses for

---

[1] We note that the second amended complaint bears two different time stamps by the clerk's office, April 20 and April 22, 1976. The court order giving plaintiff leave to file its second amended complaint instanter was entered on April 22, 1976.

Dr. Thomas Hall, 720 North Michigan Avenue, Chicago, Illinois, and 621 Broadway, Chesterton, Indiana. Plaintiff placed a second alias summons with the sheriff on May 14, 1976, directing him to serve Dr. Hall at 720 North Michigan Avenue in Chicago. The return of the sheriff, dated May 17, 1976, was marked "not found" and bore the notation that Dr. Hall had moved without leaving a forwarding address.

On June 16, 1976, plaintiff placed a third alias summons, this time with the sheriff of Porter County, Indiana, directing him to serve Dr. Thomas Hall at 621 Broadway in Chesterton, Indiana. Service was accomplished on a Dr. Thomas Hall on June 21, 1976. When Dr. Hall of Chesterton, Indiana, had neither appeared nor answered in response to plaintiff's summons, plaintiff's attorneys sent him a letter dated September 27, 1976, advising him that a default would be taken against him unless he appeared and answered within thirty days. In October of 1976, the Dr. Thomas Hall who had been served contacted plaintiff's attorneys and informed them that he was not the Dr. Thomas Hall who had treated plaintiff. Plaintiff's attorneys subsequently verified this fact.

In late December of 1976, an attorney for plaintiff contacted the attorneys for Lutheran General Hospital, who said that they were also attempting to determine the whereabouts of Dr. Hall, but had been unable to do so.

After several inquiries to the American Medical Association, in February of 1977 plaintiff finally obtained Dr. Hall's home address. A fourth alias summons was placed with the sheriff on March 1, 1977, directing him to serve Dr. Hall at his home at 821 Hudson in Glenview, Illinois. Defendant, the correct Dr. Thomas Hall, was so served on March 13, 1977.

Dr. Hall then moved to strike and dismiss the second complaint as to him, on the ground that the alleged malpractice occurred in October of 1973; that plaintiff knew or should have known of his injuries at some time prior to April of 1974; and that the second amended complaint, filed April 20, 1976, was not filed within two years from the time plaintiff knew or should have known of his injuries and therefore the action was barred by the statute of limitations. See Ill. Rev. Stat. 1975, ch. 83, par. 22.1; *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450.

The motion also sought to dismiss the action as to Dr. Hall pursuant to Supreme Court Rule 103(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 103(b)), on the ground that plaintiff failed to exercise reasonable diligence in obtaining service on Dr. Hall. Dr. Hall filed an affidavit in support of this portion of the motion, averring the following: that he was not served with summons until March 13, 1977; that he did not become aware of the action until January or February of 1977, when he was served with a subpoena; that he has been a practicing physician in the Chicago area for

over 25 years, and during the pendency of the action, he did not leave the Chicago area except for periodic two week vacations; that he resides at 821 Hudson in Glenview, Illinois, and has resided there for eight years; that at all relevant times he has kept an office in Chicago on North Michigan Avenue; that he is listed on the directory at Lutheran General Hospital and his home phone number is available at the hospital; and that he has never secreted himself during the pendency of this lawsuit in an effort to avoid service of summons.

Plaintiff filed a response to the motion to dismiss. In the response, plaintiff admitted that he knew or should have known of his injuries on or before April of 1974,[2] but denied that his action was therefore barred by the statute of limitations. Plaintiff also asserted that under section 46(2) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(2)), since Dr. Hall was named in plaintiff's first amended complaint, for purposes of the statute of limitations plaintiff's second amended complaint would relate back to the date the first amended complaint was filed, or February 11, 1976. Plaintiff's response also set forth the chronology of attempts to locate and serve Dr. Hall, supported by affidavits, essentially as we have outlined above.

After hearing argument, the transcript, if any, of which is not contained in the record, the trial court granted Dr. Hall's motion to dismiss the complaint as to him. The court dismissed the complaint with prejudice on the grounds of both the statute of limitations and the failure to exercise due diligence in obtaining service. The court also expressly found that there was no just reason to delay enforcement or appeal of the order. From this order, plaintiff appeals.

The first issue raised on appeal is whether the trial court erred in dismissing plaintiff's complaint as to Dr. Hall on the ground that plaintiff's action was barred under the statute of limitations. The statute of limitations applicable to plaintiff's malpractice claim is section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1), which provides in relevant part:

"No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, * * * shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, * * * of the existence of the injury or death for which damages are sought in the action, * * *, but in no event shall such action be brought more than 5 years after the date on which

---

[2] Plaintiff's brief asserts that "April of 1974" was a mistake and that May of 1974 was the date intended. We also note that May of 1975 is the date alleged in the second amended complaint as to when plaintiff first knew or could have known of the alleged wrongful acts committed by Dr. Hall, and it is to this date that plaintiff's counsel referred during oral argument.

occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."[3]

■■ This section was apparently inspired by the decision in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450, in which our supreme court applied the time of discovery rule to medical malpractice cases. Expressing the concern that it is "manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists" (46 Ill. 2d 32, 41, 262 N.E.2d 450), the court held that in medical malpractice cases, the statute of limitations begins to run "when the person injured learns of his injury or should reasonably have learned of it." 46 Ill. 2d 32, 40, 262 N.E.2d 450.

The question before us is the proper interpretation of the terminology of *Lipsey* and the statute in the context of the facts at bar. Citing, among other cases, *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, plaintiff contends that he did not learn nor could he have learned of his injury until he discovered not only his condition of ill being, but also the fact that it might be a result of defendant's negligence. While plaintiff's pleadings variously refer to the time of this discovery as falling somewhere between April of 1974 and May of 1975, plaintiff asserts that his second amended complaint, filed April 20, 1976, was timely in any event. Plaintiff further urges that under section 46(2) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(2)), for purposes of the statute of limitations the second amended complaint, which merely adds the allegation as to time of discovery, should relate back to the filing of the first amended complaint on February 11, 1976.

Dr. Hall responds that the rule in both *Lipsey* and the statute is couched only in terms of when the plaintiff knew or should have known of his injury, not that it was actionable. Dr. Hall contends that since plaintiff has admitted that he was in great pain from the time the operation was performed in October of 1973, plaintiff knew or should have known of his injury at that time, and therefore his action, filed more than two years later, was not timely. In support, Dr. Hall relies principally upon two decisions by two different divisions of this court, *Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930, and *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 369 N.E.2d 144.

Although these decisions do contain language favorable to Dr. Hall's position, his reliance thereon is misplaced. Subsequent decisions by each

---

[3] While not at issue in the instant case, we note that the applicability and constitutionality of the absolute time limitation, later amended to four years (P.A. 79-1434, §6, eff. Sept. 19, 1976), have been the subject of conflicting opinions by two different panels of the Fourth District. (Compare *Anderson v. Wagner* (1978), 61 Ill. App. 3d 822, 378 N.E.2d 805, with *Woodward v. Burnham City Hospital* (1978), 60 Ill. App. 3d 285, 377 N.E.2d 290.) Leave to appeal has been granted in both cases.

respective division have limited these cases to their facts and have adopted a position favorable to plaintiff in the instant case. In *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816, the First Division of this court distinguished its decision in *Anguiano* and held that where the nature and circumstances of an injury are such that its cause is unknown or apparently innocent at the time it occurs, the statute of limitations commences when the injured party discovers that the injury was wrongfully caused. Similarly, in *Martinez v. Rosenzweig* (1979), 70 Ill. App. 3d 155, 387 N.E.2d 1263, the Fifth Division of this court distinguished its decision in *Ilardi* and held that the limitations period does not begin to run until plaintiff knows or has reason to know, not only that he has a physical problem, but also that someone is or may be responsible for it. Both cases noted their agreement with the reasoning of the Fifth District Appellate Court in *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, which presented a thorough and persuasive discussion of the matter, and which held:

> "Until such time as a plaintiff knew or should have known that a condition, seemingly innocent in causation, was perhaps the result of another's act which may have been negligent, he has had no opportunity to discover that a cause of action exists (*Lipsey*, 46 Ill. 2d 32, 40, 262 N.E.2d 450, 455) or to be less than diligent in pursuing it in court. It would be both unrealistic and unfair to bar a cause of action before such time. In addition, it would not serve to further the purpose of the statute of limitations." (59 Ill. App. 3d 706, 714, 375 N.E.2d 934.)

The reasoning of the court in *Roper* was also adopted, in the context of a wrongful death action, by the Second District Appellate Court in *Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259, 380 N.E.2d 1376.

■■ The considerations advanced by the court in *Roper* and reiterated in *Kristina, Martinez,* and *Fure* appear to be present in the case at bar. Although plaintiff continued to feel pain from the time of the operation in October of 1973, the pain could have been consistent with a non-negligent failure of the operation or with normal post-operative pain. Indeed, in his deposition Dr. Hall admitted that he told plaintiff that such pain was normal after back surgery. Dr. Hall also admitted that he continued to treat plaintiff until sometime in the middle of 1974, during which period plaintiff consistently complained of pain; yet Dr. Hall was unable to explain its cause. As the court noted in *Martinez*, it would hardly be reasonable to attribute knowledge of his injury to plaintiff during a time when a specialist in such matters was unable to discover it. (70 Ill. App. 3d 155, 161.) To hold that the statute of limitations commenced to run before that time would be both unrealistic and unfair. We therefore

hold that the limitations period did not begin to run until plaintiff knew or should have known that he may have been injured as a result of defendant's wrongful conduct.

■ In cases such as this, the time of discovery is a question of fact. (*Martinez*, 70 Ill. App. 3d 155, 161; *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 813-14, 380 N.E.2d 816; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 714, 375 N.E.2d 934.) The difficulty of that question seems compounded here by the fact that, as we have noted, plaintiff has advanced three different dates as to the time of discovery: in his second amended complaint and on oral argument, May of 1975; in his response to the motion to dismiss, April of 1974; and in his brief, May of 1974. While there is obviously some confusion, we note that this is not a case in which no date as to knowledge has been pleaded and plaintiff is attempting to remedy the deficiency in his brief (compare *Kielminski v. St. Anthony's Hospital* (1979), 68 Ill. App. 3d 407, 386 N.E.2d 326), nor is this a case in which any of the times of discovery alleged is inconceivable. (*Compare Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.) Even assuming that the action was commenced on April 20, 1976, for purposes of the statute of limitations, and even assuming that the discovery took place at the earliest time alleged in any pleading, April of 1974, plaintiff could still prove that the discovery took place in the latter third of April and that the action was therefore timely. Since an action should not be dismissed unless no set of facts alleged in the pleadings could be proved which would support relief (*e.g., Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 357 N.E.2d 430; *Walker v. Rumer* (1977), 51 Ill. App. 3d 1005, 367 N.E.2d 158), the action should not have been dismissed on this ground on any of the facts alleged. We therefore need not consider plaintiff's argument that the second amended complaint relates back to the time that the first amended complaint was filed.

■ While there is precedent for remanding the cause for a hearing to determine the time of discovery as a preliminary question of fact (*Kristina*, 63 Ill. App. 3d 810, 813-14, 380 N.E.2d 816), we believe that once plaintiff's allegation has withstood a motion to dismiss, the preferable alternative is simply to remand, thereby permitting the defendant to put the matter in issue as a question of fact by filing an answer. See *Roper*, 59 Ill. App. 3d 706, 714, 375 N.E.2d 934.

The next issue is whether the trial court erred in dismissing the action with prejudice on the ground that plaintiff failed to exercise reasonable diligence in obtaining service on Dr. Hall. The relevant rule is Supreme Court Rule 103(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 103(b)), which provides:

"If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion."[4]

■■ A motion pursuant to Rule 103(b) is addressed to the sound discretion of the trial court, and it is only where there is an abuse of discretion that a reviewing court will interfere. (*E.g., Montero v. University of Illinois Hospital* (1978), 57 Ill. App. 3d 206, 209, 372 N.E.2d 1010.) Each case must be determined on its own particular facts, but courts will look at several factors in deciding whether the plaintiff has carried his burden of showing that he has exercised reasonable diligence: (1) the length of time used to obtain service; (2) the activities of the plaintiff; (3) any knowledge on the part of the plaintiff of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) the actual knowledge by the defendant of the pendency of the action; and (6) special circumstances which would affect the efforts made by the plaintiff. *Faust v. Michael Reese Hospital & Medical Center* (1978), 61 Ill. App. 3d 233, 236, 377 N.E.2d 1040; *Montero,* 57 Ill. App. 3d 206, 210, 372 N.E.2d 1010; *Alsobrook v. Cote* (1971), 133 Ill. App. 2d 261, 264, 273 N.E.2d 270.

■■ Plaintiff contends that his exercise of reasonable diligence in effecting service is amply illustrated by the four alias summonses, the search of the telephone directories, the contacting of the Department of Registration and Education, the successful service on the wrong doctor, the inquiries of the hospital at which the operation was performed, and the several inquiries of the American Medical Association. We agree. Although 13 months elapsed between the time of the first amended complaint and the time of service, during approximately four months of that period plaintiff's attorneys were justifiably lulled by the apparently successful service on the Dr. Thomas Hall of Chesterton, Indiana, whose address was provided by the Department of Registration and Education. Throughout the remainder of that period, plaintiff made numerous attempts to serve Dr. Hall at various addresses, but he was not to be found at any of the clinics, hospitals, or offices where he was or had been practicing, and his home address was not listed in the telephone directories. We believe that plaintiff exercised reasonable diligence in

---

[4] We note that the action could not have been dismissed with prejudice under this rule if the limitations period commenced at the latest time alleged, May of 1975, as the service on March 13, 1977, would have been effectuated within two years of that date.

effecting service and that the trial court abused its discretion in dismissing the action as to Dr. Hall on this ground.

The cases cited by Dr. Hall are distinguishable. In *Montero v. University of Illinois Hospital* (1978), 57 Ill. App. 3d 206, 372 N.E.2d 1010, the individual defendants were not served for almost two years, and for 13 months out of that period the plaintiff did absolutely nothing to effect service, as contrasted with the efforts made by plaintiff during the 13 month period in the case at bar. In addition, the court in *Montero* observed that the plaintiff made no attempt to gain information on the location of the individual defendants from the hospital where the operation was performed. In contrast, in the instant case plaintiff attempted to locate Dr. Hall through the co-defendant hospital, but the hospital, too, had been unsuccessful in its attempt to locate Dr. Hall.

Similarly, in *Mosley v. Spears* (1970), 126 Ill. App. 2d 35, 261 N.E.2d 510, service was not accomplished for 13 months, during which plaintiff did little or nothing to obtain service, even though service could have been effected on the Secretary of State's office at any time. More recently, in *Piscitello v. Barton* (1978), 66 Ill. App. 3d 451, 384 N.E.2d 47, summons was not served for almost two years, during which the plaintiffs did absolutely nothing for 13 months. In the instant case, plaintiff actively and continuously sought to obtain service for the entire 13 months, with the exception of the period during which plaintiff thought service had been accomplished.

Finally, in *Faust v. Michael Reese Hospital & Medical Center* (1978), 61 Ill. App. 3d 233, 377 N.E.2d 1040, a 14-month period of inactivity went by, during which time the plaintiff was essentially in possession of the defendant's address and the defendant was readily locatable. While the length of time necessary to obtain service in the case at bar, 13 months, bears superficial resemblance to the time periods in *Montero, Mosley, Piscitello,* and *Faust,* the coincidence has no talismanic effect. Rather, each case must be decided on its own particular facts, and having examined the facts of this case in light of the relevant factors, we find that plaintiff exercised reasonable diligence and that the trial court abused its discretion in dismissing the action.

Accordingly, the order of the circuit court of Cook County dismissing the complaint with prejudice is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.